## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

MT PRODUCTS, LLC

*Plaintiff,*

v.

ALTERNATIVE CAPITAL GROUP,
LLC, SUPERFAST CAPITAL, INC.; TOP
CHOICE FINANCIAL, INC.; CURE
PAYMENT RECOVERY SOLUTIONS,
LLC; SUPERVEST, INC.; SV CAPITAL
MANAGEMENT, LLC; EZ ADVANCE
LLC; GABRIEL SHAMUELOV a/k/a/
Matt Owners" and "Jason Caldwell; and
Does 1-10.

*Defendant.*

8:25-CV-02510 WFJ-SPF

---

**DEFENDANTS', SUPERVEST, INC., SV CAPITAL MANAGEMENT,
LLC, AND TOP CHOICE FINANCIAL, INC., MOTION TO DISMISS
THE COMPLAINT PURSUANT TO A RULE 12(B)6  AND RULE
12(B)(1) AND INCORPORATED MEMORANDUM OF LAW**

Defendants, SUPERVEST, INC. ("SuperVest"), SV CAPITAL

MANAGEMENT, LLC ("SVC Management"), and TOP CHOICE FINANCIAL,

INC. ("Top Choice", and collectively with SuperVest and SV Management, the

SuperVest, the "SVTC Defendants") by and through their undersigned counsel,

hereby move this Court to dismiss Plaintiff's, MT Products, LLC ("Plaintiff"),

Complaint [D.E. 1], and in support state as follows:

## I. Introduction

This case arises from a single revenue based financing transaction. Plaintiff alleges it was fraudulently induced to enter into an agreement to sell $109,500 of its future receipts in exchange for $75,000 based on the promise of subsequent financing rounds. These facts are straightforward, the legal issues are not complex, and any alleged damages - <u>if any</u> – would barely scratch the jurisdictional threshold of this court.  Yet, Plaintiff's 66-page Complaint—consisting of nearly 300 paragraphs and 18 claims—attempts to recast a standard business dispute as a wide-ranging criminal enterprise.

In doing so, Plaintiff makes several damaging admissions. Specifically, Plaintiff admits to making material false statements to induce the financing transaction[1]. Additionally, Plaintiff admits to rejecting an offer to rescind the transaction just two months after execution. This rescission would have returned Plaintiff to its original position and eliminated the damages now alleged.

These admissions aside, and for the reasons outlined below, the Complaint should be dismissed for the following reasons: (1) the Complaint is in impermissible shotgun pleading; (2) the Plaintiff failed to plausibly plead a claim under the Racketeer Influenced and Corrupt Organizations Act

---

[1] *Sec. & Exch. Comm'n v. Monterosso*, 07-61693-CIV, 2011 WL 13173809, at *3 (S.D. Fla. Mar.8, 2011) ("admissions in pleading are deemed judicial admission, binding on the party who makes them, even if the party offers post-pleading evidence which contradicts the admission.").

("RICO"), 18.U.S.C. 1961-1968; and (3) Plaintiff's failure to plead claims under the federal RICO statute deprives this court of subject matter jurisdiction of the state claims.

## II. Relevant Factual Summary as all alleged in the Complaint

Plaintiff alleges in February 2025, it was seeking financing to expand its business operation. *Compl.* at ¶ 23. On January 30, 2025, Plaintiff received an unsolicited cold call from a broker that Plaintiff later learned to be Defendant, Gabriel Shamuelov (the "Broker Defendant"), using the alias, Matt Ownens. *Id.* at ¶ 24, 28.

Between January 30, 2025 and February 11, 2025, engaged in "extensive communications" where the Broker Defendant presented a financing proposal to the Plaintiff that consisted of an "immediate $75,000 advance followed by two guaranteed additional rounds: $150,000 and $300,000". *Id.* at ¶ 28.

During this twelve-day window, the Defendant Broker provided Plaintiff with approximately "eight versions of a forged addendum to the funding agreement" that contained the additional three rounds of funding[2]. The Broker Defendants sent these funding addendums Plaintiff via DocuSign, each bearing SuperFast Capital's official logo and formatting.". *Id.* 32. The Broker

---

[2] Although Plaintiff alleges receiving eight different versions of the forged addendum during this 12 day window, Plaintiff only version, dated February 10, 2025, as an exhibit. See D.E. 1-2.

Defendant signed the funding addendum using the alias, "Jason Caldwell", who Plaintiff understood to be SuperFast Capital's legal counsel. *Id.* at ¶ 33.

On February 11, 2025, Plaintiff entered into revenue based financing agreement ("RBF Agreement") in which Plaintiff agreed to sell $109,500 of its future receipts in exchange for $75,000. Prior to receiving the funding, the Plaintiff's owner, Leandro Obenauer ("Obenauer"), participated in a "funding call." The purpose of this "critical verification call" was to ensure the Plaintiff understood the terms of the financing. During this call, Obenauer was specifically asked whether any additional rounds of funding had been promised beyond what was provided for under the RBF Agreement. Obenauer falsely replied "no." as instructed by the Broker Defendant. The following day, the Plaintiff received the net amount of $73,500. *Id* at ¶¶ 36-41.

Between February 11, 2025 and approximately April 15, 2025 Plaintiff remitted the specified percentage of its weekly receipt totaling $32,850. *Id.* at ¶42. On April 15, 2025,Obenauer contacted Defendant Superfast Capital Inc. regarding the second round of financing. During this conversation, Plaintiff learned it was not entitled to additional rounds of financing. *Id.* at ¶¶49-51.

At that time, Obenauer also provided the Superfast Capital employee with the forged addendum that predated the RBG Agreement. After reviewing

document, the employee confirmed the addendum did not originate from Superfast Capital. *Id*. at ¶52.

On April 18, 2025, Plaintiff began sending demand letters to all Defendants. On April 24, 2025, Plaintiff received a response from a representative of SuperFast Capital and Defendant ACG. The response confirmed that the promised additional rounds of funding were not part of the RBF Agreement and confronted Plaintiff about the false statements made during the funding call. Despite this, the response offered to rescind the transaction, contingent upon Plaintiff returning the net funding amount less any remittances made (a total of approximately $40,000.00). Plaintiff rejected this offer and conveyed that while it could not return the remaining principal balance, Plaintiff desired the collection of payments to cease and the lien associated with the transaction to be released. *Id*. at ¶¶59-66.

### III. Legal Standard.

**a. Rule 12(b)(6) Standard.**

To survive a Rule 12(b)6) motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## IV. Argument

### a. The Complaint Is An Impermissible Shotgun Pleading.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. Complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "[A] complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" constitutes a shotgun pleading. *Id.* Indeed, the Eleventh Circuit has established that a shotgun pleading is unacceptable and a court should strike the complaint and instruct the plaintiff to file a more definite statement. *Davis v. Coca-Cola Bottling Co. Consol.*, 516

F.3d 955, 984 (11th Cir. 2008) (collecting cases), *abrogated on other grounds by*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The Complaint, containing nearly 300 numbered paragraphs is the very type of shotgun pleading the Eleventh Circuit deems unacceptable. Rife with irrelevant factual allegations and legal conclusions, the Complaint's 18 counts incorporates all prior paragraphs in the complaint, rendering the final count a combination of the entire complaint. *See Compl.* at ¶¶ 162, 170, 179, 188, 195, 202, 212, 221, 230, 237,242,247,257,263, 268, 274, 281.

Making matters worse, the Complaint requires defendants to speculate and search through the pleading to determine the specific nature of the Plaintiff's grievances and which allegations apple to each claim. *Shillingford v. Rolly Marine Serv., Inc.*, No. 14-CIV-61936, 2014 WL 6682477, at *2 (S.D. Fla. Nov. 25, 2014)(the Court cannot be forced to speculate on what someone is complaining about, simply fill in the blanks to state a claim, or search through a Plaintiff's filings to find or construct a pleading that satisfies Rule 8.). Yet, the Complaint leaves both the court and defendants to undertake this task.

For example, the Plaintiff alleges the RBF Agreement was actually a loan rather than a purchase of future receivables contract. *Compl.* at ¶¶ 157-161. Not only are these conclusory allegations contradicted by the actual RBF

Agreement[3] that Plaintiff unsurprisingly failed to attached as an exhibit to its Complaint[4], the defendants are left to guess which of the 18 claims or various legal theories sprinkled throughout the Complaint apply to these allegations.

Likewise, Plaintiff alleges that while the defendants were active participants in a RICO conspiracy, they failed to take adequate steps to uncover the fraudulent scheme they were allegedly furthering. *Id.* at ¶¶ 84-104. While this appears illogical, defendants are left to speculate whether these allegations relate to the RICO claims or one of the other dozen counts. Even affording Plaintiff the favorable inference that these allegations support a claim other than the RICO scheme, Plaintiff returns to the RICO allegations in the subsequent eight paragraphs under the heading "Supervest & Top Choice Role in Fraud." Although none of the paragraphs

---

[3] Attached as Exhibit 1 is a copy of the Revenue Purchase Agreement, dated February 11, 2025. Plaintiff's allegations relating to the RBF Agreement permit this court to consider this exhibit. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (permitting courts to consider documents "beyond the face of the complaint" in ruling on a Rule 12(b)(6) motion to dismiss, where the "plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss"); *Day v. Taylor, 400 F.3d 1272, 1276* (11th Cir. 2005)( "[A] court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.").

[4] The RBF Agreement contradicts Plaintiff's allegations the transaction was loan. *Compl.* at ¶¶157-161. As reflected in the RBF Agreement, payment of the Purchased Amount was contingent upon the Plaintiff generating sufficient accounts receivable such that the Specified Percentage of those receivables will be able to support payment of the Purchased Amount over a reasonable period of time, and, therefore, the payment is not absolutely payable (Exhibit 1; p.2). Likewise, filing for bankruptcy was not an event of default. *Id.* Lastly, while Plaintiff claims the reconciliation provision was illusory due to an email address that did not work, Plaintiff fails to reference all of the reconciliation sections of the RBF Agreement. *Id.* at Section 1.3 and 1.4. Moreover, Plaintiff does not even allege it requested a reconciliation.

in this section allege fraudulent conduct, the SVTC Defendants are left to guess whether these allegations relate back to the RICO claims or another count. *Id. at* ¶¶105-113.

Plaintiff further alleges throughout the Complaint that the Florida UCC-1 was filed by a deceased individual, yet attributes this alleged "fraudulent on its face act" to different defendants throughout the Complaint. The upshot being the defendants are left to guess who is responsible for that action. *Id.* at ¶¶119,120, 190, 222. Moreover, these allegations are entirely irrelevant as Plaintiff's own exhibit contradicts the allegations that the UCC statement was filed by a deceased individual. (See D.E. 1-4 ). While Mr. Vaknen's name appears next to the mailing address for SuperFast Capital, Inc., the UCC statement does not identify him as the filer. Instead, the filer of the UCC statement is Corporation Service Company. *Id.*

Based on the glaring pleading deficiencies, the Complaint should be dismissed as an impermissible shotgun pleading.

**b.    The Complaint Fails State A Cause Of Action For Civil RICO Requires Dismissal**

Plaintiff fails to allege a plausible federal RICO claim. A plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of

racketeering, which (5) caused (6) injury to the business or property of the plaintiff. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216. A RICO claim can be dismissed if it fails to plausibly allege any one of these six elements. *Id*.

Additionally, Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (citing Fed. R. Civ. P. 9(b). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Id.* at 1316-17. The critical concern reflected in Rule 9(b) is that the allegations sufficiently alert Defendants to the precise misconduct with which they are charged. *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511-12 (11th Cir. 1988).

The Complaint fails to satisfy the heightened pleading requirement mandated by Rule 9(b) as well as the general pleading standard. Indeed, the allegations in the Complaint fail to alert SVTC Defendants of any alleged misconduct on their part, let alone  their active participation in a criminal racketeering enterprise.

Parsing through  Complaint's voluminous number of paragraphs that allege bare legal conclusions and irrelevant allegations, the crux of the factual allegations against these SVTC Defendants boil down to:

- SuperVest/SV Capital Management is a platform that allows investors to syndicate in revenue based financing transactions and provided the financing capital  Plaintiff obtain under the RBF Agreement. *Compl.* at ¶¶18, 82, 143, 165;

- Top Choice, as disclosed on the RBF Agreement, acted as the sub-servicer under RBF Agreement by providing the funds to Plaintiff and collecting Plaintiff's remittance under the agreement. *Id* at ¶¶ 8, 80;

- Plaintiff unsuccessfully attempted to mail and serve Top Choice with a demand letter. *Id* at ¶ 58;

- SuperVest, SV and Top Choice share a common address and Plaintiff spoke with, shared employee who provided assistance in May 2025. *Id* at ¶¶ 70, 105,106, 112;

- The RBF Agreement includes an email address with the domain "@supervestcap.com" that did not work. *Id* at ¶ 82; and

- Despite the Plaintiff rejecting an offer to rescind the RBF Agreement on April 24, 2025, the Plaintiff alleges that SuperVest's ability—but failure—to offer rescission of the agreement "locked in SuperVest's ratification and liability alongside the other Super Top Defendants." *Id* at ¶¶61.

Because of the scarcity of factual allegations of any wrong doing, the court should dismiss Plaintiff's RICO related claims for multiple reasons. *First*, The Plaintiff failed to plausibly allege each of the defendants operated or managed the RICO enterprise.

Plaintiff alleges the Defendants engaged in an association-in-fact enterprise. *See Compl.* at ¶18. "To plead an association-in-fact enterprise, a plaintiff must allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Cisneros*, 972 F.3d at 1211 (internal quotations omitted).

As in this case, an abstract common purpose of making money will not suffice. *Id citing Ray v. Spirit Airlines, Inc.*, 836 F.3d at 1352–53, 1352 n.3 (observing that the "common purpose of making money" would not be sufficient to find an association-in-fact enterprise between Spirit Airlines and outside vendors who merely provided "anodyne services"). Instead, if making money for themselves is a participants' ultimate purpose, a plaintiff is required to "plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id. citing Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1284–85 (11th Cir. 2006) (finding sufficient a common purpose of making money by hiring undocumented immigrants*), abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714–15 (11th Cir. 2014); *United States v. Pipkins*, 378 F.3d 1281, 1290 (11th Cir. 2004) ("Pipkins agreed to participate in an enterprise, the overall objective of which was to make

money prostituting juveniles."), *vacated*, 544 U.S. 902, 125 S.Ct. 1617, 161 L.Ed.2d 275 (2005), *reinstated*, 412 F.3d 1251 (11th Cir. 2005).

The Plaintiff's allegations suggest that the Defendants were simply interested in making money, and not making money through criminal conduct, which fails to satisfy the common purpose prong. Indeed, Plaintiff concedes  to making false statements during the funding call to circumvent the defendants' efforts to detect and prevent the very alleged fraudulent conduct central to this case.

Moreover, the Complaint is devoid of factual allegations suggesting SVTC Defendants purposeful involvement in any allegedly fraudulent activities. Aside from the Plaintiff's own fraudulent statements during the funding call, and the "eight versions of a forged addendum"[5] transmitted days before the  RBF Agreement was executed, the Complaint alleges facts the defendants were assisting the Plaintiff, rather than engage in fraud. *See Compl.* at ¶68-71;  *See also Ray*, 836 F.3d at 1352–53 (affirming dismissal of a RICO complaint for failure to allege a common purpose where, even if the defendant had independently committed fraud, the plaintiff failed to plead that

---

[5] Only one version of these alleged eight versions of the forged addendum is attached to the complaint. Other than the single version attached, the Complaint fails to identify what exact dates these other versions were transmitted, what was 1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the *statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud."*

the other participants in the alleged enterprise shared a common purpose to do so).

*Secondly*, for the same reasons, the Plaintiff failed to plausibly allege that each defendant operated or managed the enterprise. *Cisneros, 972 F.3d at 1210, 1211.* The "operation or management test" requires that to be held liable under the RICO statute, a defendant must have had some part in directing the enterprise's affairs. *In re Managed Care Lit., 150 F. Supp. 2d 1330, 1342 (S.D. Fla. 2001) (citing Reves, 507 U.S. at 179); U.S. v. Castro, 89 F.3d 1443, 1452 (11th Cir. 1996)).* Specifically, a defendant must knowingly implement and make decisions in order to be liable under the "operation or management" test. *Leon v. Cont'l AG, 301 F. Supp. 3d 1203, 1232 (S.D. Fla. 2017) (citing United States v. Browne, 505 F.3d 1229, 1277 (11th Cir. 2007)).* The Complaint is devoid of any such allegations.

*Third*, Plaintiff fails to meet the Rule 9(b) pleading requirement that each defendant participated in the affairs of the enterprise through a "pattern of racketeering activity," which requires "at least two acts of racketeering activity." 18 U.S.C. §§ 1962(c), 1961(5).

Here Plaintiff alleges in conclusory fashion the racketeering activities consist of multiple predicate acts including: (a) Mail Fraud (18 U.S.C. § 1341); (b) Wire Fraud (18 U.S.C. § 1343); (c) Identity Theft (18 U.S.C. § 1028A); and (d) Computer Fraud (18 U.S.C. § 1030) *Compl.* at.¶19.

The Plaintiff fails to allege the two predicate acts against the SVTC Defendants required to support RICO-related claims, which warrants dismissal. Instead, the Plaintiff conclusory alleges that the SVTC Defendants engaged in mail fraud based solely on an inability to successfully mail a demand letter. Even if such an occurrence constituted a predicate act, which it does not, the allegation fails to meet the specificity requirements of Rule 9(b) regarding the *who, what, when, where, and how* of the alleged fraud.

Similarly, the Plaintiff fails to plead how any actions taken during the two weeks prior to executing the RBF Agreement satisfy a fraud-based predicate act. To the contrary, the Complaint forecloses any finding of fraud. The Plaintiff admits that the allegedly forged addendums were circulated days prior to the execution of the RBF Agreement; therefore, they were purported addendums to a non-existent contract. Furthermore, the RBF Agreement neither mentions additional rounds of financing nor references the alleged addendums.

Most importantly, the Plaintiff concedes he was asked specifically whether any promises of additional financing were made prior to agreeing to the RBF Agreement. In response, the Plaintiff intentionally misrepresented that no such promises existed. Plaintiff's own conduct in connection with a single transaction—which netted the Plaintiff approximately $73,000—

precludes allegations that the SVTC Defendants engaged in a pattern of criminal conduct of a continuing nature. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264- 1267 (11th Cir. 2004). Courts measure a "substantial period of time" in years, not in weeks. See Jackson, 372 F.3d at 1267 (noting courts measure a "substantial period of time" in years, not in weeks and the overwhelming weight of case authority suggests that nine months is not an adequately substantial period of time.).

Finally, Plaintiff's own conduct in connection with this single transaction forecloses any credible allegations concerning damages or injury proximately caused by the RICO enterprise. As noted above, in order to receive the financing under the RBF Agreement, Plaintiff intentionally mispresented and concealed the Broker Defendant's alleged promise of additional financing. Two months after receiving approximately $73,500 under RBF Agreement and utilizing those funds to its benefit, Plaintiff concedes it rejected an offer to completely unwind the transaction. This is no small concession. Because had Plaintiff agreed to the recession offered in April 2025, Plaintiff would have returned to the same exact position it held  prior to entering the February 11th RBF Agreement.  Instead, Plaintiff  continued to perform under the RBF Agreement until approximately the same time as it commenced this action despite allegedly uncovering this RICO enterprise in April 2025. As the

Plaintiff failed to plausibly allege a claim under the federal RICO statue, Plaintiff's RICO claim should be dismissed.

### c.    RICO Conspiracy Claims Fail Because the Plaint Failed to Allege a Substantive RICO Claim

Because Plaintiff's substantive RICO claims fail, its conspiracy claims under 18 U.S.C. § 1962(d)  fail as well[6]. As this Court noted, When substantive RICO claims are dismissed and a RICO conspiracy claim "adds nothing" to the substantive allegations, the conspiracy claims are also dismissed. *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1203 (11th Cir. 2025).

### d.    The Court Lack Subject Matter Jurisdiction

Plaintiff alleges the  Court  has  federal-question  jurisdiction  under 28  U.S.C.  §  1331 because Plaintiff  asserts  federal RICO claims under §§18 U.S.C.  1962(c)  and  1962(d)[7].  Federal  courts  have  limited  subject-matter jurisdiction, and the party invoking the court's jurisdiction bears the burden of proving it exists." *Orchid  Quay,  LLC  v.  Suncor  Bristol  Bay,  LLC*, 178

---

[6] [I]nterpterion of Florida's RICO law is informed by case law interpreting the federal RICO statute on which Chapter 772 is patterned." *Jackson  v.  BellSouth Telecommunications*, 372 F.3d 1250, 1263 (11th Cir. 2004); *see also Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*, 881 So. 2d 565, 570 n.1 (Fla. Dist. Ct. App. 2004) ("Because of the similarities between Florida and federal RICO acts, Florida looks to federal authority regarding the interpretation and application of its act.").Accordingly, Plaintiff's RICO claims under Florida law should also be dismissed.

[7] Plaintiff passingly claims "federal securities statutes reference herein" confer jurisdiction to this court yet fails to allege any claims under federal securities laws.  *Compl.* at ¶1.

F.Supp.3d 1300, 1302 (S.D. Fla. 2016) (*citing McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (*per curiam*)). A party, or a court on its own initiative, can challenge whether the court has subject matter jurisdiction, at any time, under Fed.R.Civ.P. 12(b)(1). *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction once it has dismissed all claims over which it had original jurisdiction.

Plaintiff's jurisdictional anchor arises out its federal RICO claims under §§18 U.S.C. 1962(c) and 1962(d). But with these federal claims requiring dismissal, Plaintiff's anchor for federal jurisdiction is gone. District courts are generally encouraged to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). Accordingly, all of Plaintiff's supplemental claims should be dismissed.

## V. Conclusion

**WHEREFORE**, the SVTC Defendants respectfully request that this Court enter an Order dismissing Plaintiff's Complaint with prejudice, awarding the SVTC Defendants its reasonable costs and attorneys' fees, and all other relief deemed proper and just by this Court.

## Local Rule 3.01(g) Certification

The undersigned certifies that he has conferred with Plaintiff's counsel on January 8, 2026 and Plaintiff's do not consent to the relief requested by the instant motion.

Respectfully submitted,

**CASAGRANDE LAW, PLLC**
11 Broadway, Suite 615
New York, NY 10004
Tel.   646-355-8701
Fax:  212-568-3546

*/s/ David C. Casagrande*
David C. Casagrande (FL Bar No.: 124059)
dcasagrande@casalawpllc.com
*Attorneys for Defendants SuperVest, Inc.*
*SV Capital Management, LLC and Top Choice*
*Financial, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 23, 2026, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ David C. Casagrande*
DAVID C. CASAGRANDE