UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA

MT PRODUCTS, LLC

     *Plaintiff,*

v.

ALTERNATIVE CAPITAL GROUP,
LLC, et. al.

     *Defendant.*

Case No.: 8:25-CV-02510

## MOTION TO DISMISS AMENDED COMPLAINT

Defendants, GABRIEL SHAMUELOV and EZ ADVANCE, LLC, by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), hereby move to dismiss the Amended Complaint, ECF No. 42, based on a lack of personal jurisdiction and for failure to state a claim upon which relief can be granted, and state the following in support thereof.

### I.   Overview

Plaintiff claims it was defrauded by the Defendants when Plaintiff's principal, Leandro Obenauer, agreed to sell his company's future accounts receivables in exchange for $75,000 pursuant to a written Revenue Purchase Agreement negotiated and signed in January and February 2025. Plaintiff's Amended Complaint is still not a short and plain statement of its claims. Over a lengthy 50 pages, the Amended Complaint now asserts 20 separate

causes of action (up from 18 in the initial Complaint), and asserts claims arising out of federal, Florida, and New York state law. Plaintiff has asserted claims against Shamuelov and EZ Advance for RICO violations (Count I), Rico Conspiracy (Count II), Florida RICO violations (Count III), aiding and abetting fraud (Count IV), fraudulent inducement (Count V), conspiracy to commit fraud (Count VI), FDUPTA violations (Count VII – EZ Advance only), negligent undertaking and supervision (Count XI), violations of New York General Business Law § 349 (Count XIII- EZ Advance only), breach of fiduciary duty (Count XIV – EZ Advance only), unjust enrichment (Count XV – EZ Advance only), declaratory relief (Count XVI – EZ Advance only), and a claim for "usury/unlawful interest" (Count XIX).

Despite its volume, the Amended Complaint still fails to include *factual* allegations that would establish personal jurisdiction over either Defendant, both of whom are domiciled in New York. Plaintiff also failed to plead the alleged fraud with particularity. This failure was compounded by his curious refusal to attach the Revenue Purchase Agreement even though he is seeking a declaration of his rights thereunder and claims the transaction was actually a usurious loan. The only fact that *was* clearly alleged is that Plaintiff signed an agreement to receive a payment of $75,000 in return for the sale of Plaintiff's accounts receivables and Plaintiff actually received that money.

Even though Plaintiff baldly asserts that the transaction was a usurious loan, Plaintiff claims it was damaged because it did not receive two *additional* rounds of funding. For these reasons, and as explained more fully below, the Court should grant this Motion and should dismiss the Amended Complaint.

## II.    **Legal Standard**

On a motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of proof to establish personal jurisdiction over a nonresident defendant." *Israel v. Alfa Laval, Inc.*, No. 8:20-CV-2133-WFJ-AAS, 2021 WL 1662770, at *2–3 (M.D. Fla. Apr. 28, 2021) (Jung, J.) (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002)). The plaintiff must make this showing by a preponderance of the evidence, either at an evidentiary hearing or at trial. *AcryliCon USA, LLC v. Silikal GmbH*, 985 F. 3d 1350, 1364 (11th Cir. 2021). However, if the court declines to hold an evidentiary hearing and decides to adjudicate the existence of personal jurisdiction at trial, "then it reviews the motion to dismiss under a prima facie standard" and decides the motion based solely on the complaint and affidavits. *Rouphael*, 2025 WL 3022246, at *5 (quoting *AcryliCon*, 985 F. 3d at 1364).

To survive a motion to dismiss for failure to state a cause of action, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The court must accept as true all factual allegations except for "labels" and legal conclusions. *Iqbal,* 556 U.S. at 678-79

### III.   <u>Memorandum of Law</u>

#### A. **Plaintiff Failed to Establish Personal Jurisdiction over the Defendants.**

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). The plaintiff "must allege sufficient facts to establish personal jurisdiction over 'each defendant separately.'" *Lorente-Garcia v. Giraldo-Navarro*, 759 F. Supp. 3d 1301, 1306 (S.D. Fla. 2024) (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). The plaintiff establishes a prima facie case of jurisdiction if it alleges sufficient jurisdictional facts to withstand a motion for directed verdict. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002).

On a Rule 12(b)(2) motion, the district court must first determine whether the forum state's long-arm statute provides a sufficient basis for personal jurisdiction. *Rouphael v. Khamisi*, No. 8:24-CV-01556-WFJ-SPF,

2025 WL 3022246, at *5 (M.D. Fla. Oct. 29, 2025) (Jung, J.) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). If the court answers this question in the affirmative, the court must "determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Id.* To determine whether due process has been satisfied, the court must consider: "(1) whether the claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the defendant 'purposely availed' herself of the privilege of conducting activities within the forum state; and (3) whether exercising personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" *Divine Serenity Shop, Inc. v. Plant Identification Inc.*, No. 8:24-CV-2081-WFJ-LSG, 2025 WL 1370348, at *6 (M.D. Fla. May 12, 2025) (Jung, J.) (citations omitted).

Based on the scant and conclusory allegations of the Amended Complaint, the Court need consider only whether Plaintiff alleged sufficient

facts to establish a basis for specific jurisdiction[1] under Florida's long-arm statute, § 48.193.[2]

Based on the nature of the Complaint, the only potential basis to obtain jurisdiction over these Defendants would be § 48.193(1)(a)(2) or (1)(a)(6).[3] However, Plaintiff's alleged damages are only economic, so sub-section (1)(a)(6) cannot provide jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 629 (11th Cir. 1996) ("It is well-established, however, that mere economic injury without accompanying personal injury or property injury

---

[1] Plaintiff has not alleged any basis for general jurisdiction because the Amended Complaint contains no allegations that these Defendants engaged in substantial and not isolated activity in Florda. In fact, the only alleged contact between the Defendants and Florida is the underlying transaction with the Plaintiff.

[2] While the Court need not consider whether due process was satisfied, Defendants nevertheless address that element of jurisdiction below.

[3] Section 48.193 provides, in relevant part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> ...
> 2. Committing a tortious act within this state.
> ...
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
> a. The defendant was engaged in solicitation or service activities within this state; or
> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

does not confer personal jurisdiction over nonresident defendants under section 48e.193(1)(f).”); *Rogers v. Nacchio*, 241 Fed. Appx. 602, 606 (11th Cir. 2007) (“With regard to § 48.193(1)(f), the court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction in Florida. *Aetna Life & Cas. Co. v. Therm−O−Disc, Inc.,* 511 So.2d 992, 994 (Fla. 1987).”).[4] Therefore, the only jurisdictional hook available to MT Products is § 48.193(1)(a)(2), which requires factual allegations that Shamuelov and EZ Advance committed a tortious act in Florida. A nonresident defendant “commits ‘a tortious act within [Florida]’ when he commits an act *outside* the state that causes *injury within Florida.*” *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (citation omitted) (italics in original). As will be shown below, Plaintiff's allegations are insufficient to support jurisdiction over either Defendant.

Plaintiff's initial allegations state:

2. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2) as a substantial part of the events/injuries occurred here, including disbursement of funds and the filing of a Florida UCC-1 lien.

3. Personal jurisdiction exists where Defendants transact business in Florida; acts alleged occur here; and tortious impacts were felt in Florida, rendering exercise reasonable.

---

[4] Section 48.193(1)(f) has since been renumbered as § 48.193(1)(a)(6).

Am. Compl. ¶¶ 2-3.

These scant allegations are vague and conclusory and therefore do not support jurisdiction over either Defendant. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (stating that "vague and conclusory allegations...are insufficient to establish a prima facie case of personal jurisdiction over Yarmuth."). "Florida's long-arm statute is to be strictly construed." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627 (11th Cir. 1996)). Plaintiff fails to identify what business each Defendant transacted in Florida, what alleged wrongful acts occurred in Florida, and what "tortious impacts" were felt in Florida. Because these allegations are mere legal conclusions, the Court should not consider them. *Worldwide Aircraft Services Inc. v. Sec'y of Health & Human Services*, 763 F. Supp. 3d 1371, 1381 (M.D. Fla. 2025) (Jung, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And, because the Plaintiff's allegations are legal conclusions instead of facts, they are insufficient to withstand a motion for directed verdict.

Plaintiff concedes that EZ Advance is a New York limited liability company with its principal place of business in New York. Am. Compl. ¶ 10. Plaintiff also concedes that Shamuelov is a New York resident. *Id*. at ¶ 17.

Despite bearing the burden of alleging sufficient facts to establish jurisdiction over Shamuelov and EZ Advance pursuant to § 48.193, Plaintiff failed to meet its burden. There are no allegations that either Defendant even conducted any business in Florida aside from this lone transaction. And, as argued in greater detail below, Plaintiff failed to plead the alleged fraud with particularity, and its allegations demonstrate that the "fraud" is actually the result of Obenauer's "understanding" – not specific false statements made by Shamuelov – that Plaintiff would receive additional funding. Therefore, Plaintiff failed to plead any wrongful conduct on the part of the Defendants inside Florida or otherwise. The closest Plaintiff gets to providing factual allegations identifying the Defendants' tortious conduct is what Plaintiff refers to as the "Initial Fraud". *See* Am. Compl. ¶¶ 23-32. These allegations purport to establish that Shamuelov made certain false statements to Plaintiff's principal in phone calls, text messages, and emails over a ten-day period in January and February 2025.[5] However, Plaintiff's failure to attach the Funding Agreement makes it impossible to determine whether any of

---

[5] Paragraph 24 alleges:

> Beginning January 30, 2025, Shamuelov (posing as "Matt Owens") contacted Plaintiff via unsolicited cold call and then engaged in a two-week campaign of deception. Using emails from matt@ezadvancellc.com and cell numbers 786-952-6979, 347-933-7764, and 516-689-1420, he falsely held himself out as a Senior Finance Officer with direct funding and decision-making authority at SuperFast Capital.

Shamuelov's alleged statements were *actually* false because the Defendants and the Court cannot compare the allegedly false statements with the terms contained in the Funding Agreement. Moreover, whether the addenda were signed by Shamuelov, "Matt Owens", or "Jason Caldwell" has no bearing on whether Plaintiff was "promised" funding that it never received. And within this subset, only Paragraph 26 contains anything approaching a factual allegation that describes the alleged "promise".[6] The Plaintiff's allegations lack any *specific facts* that would support haling either Defendant into a Florida court. Further, Plaintiff's allegations show that Plaintiff received the $75,000 in funding it sought. At this juncture, Plaintiff failed to establish whether it suffered any damages whatsoever. *See Israel v. Alfa Laval, Inc.*, No. 8:20-CV-2133-WFJ-AAS, 2021 WL 1662770, at *5 (M.D. Fla. Apr. 28, 2021) (Jung, J.) (alleged injury in Florida insufficient to trigger personal jurisdiction).

Plaintiff's attempt to establish jurisdiction over EZ Advance is even weaker. Plaintiff never alleges that its principal ever communicated with EZ Advance, so Plaintiff cannot sue EZ Advance for any fraud-based claims. In fact, the Amended Complaint asserts that *after* the alleged fraud was

---

[6] However, the "promise" in Paragraph 26 is conclusory, for the allegation states: "Shamuelov promised Plaintiff an immediate $75,000 advance followed by two guaranteed additional rounds ($150,000 and $300,000) that were allegedly pre-approved with no further underwriting required

perpetrated, its principal, Mr. Obenauer, spoke with a representative of SuperFast Capital who advised that the "broker on record" for Plaintiff's $75,000 transaction was EZ Advance LLC. Compl. ¶ 34. Plaintiff alleges that Shamuelov, posing at "Matt Owens", held himself out as working for SuperFast Capital. *Id.* at ¶ 24. Plaintiff thus failed to show that EZ Advance *did anything* (i.e., committed any tortious act within Florida) that would establish a prima facie basis for jurisdiction over EZ Advance under Florida Statute § 48.193(1)(a)(2). The Court cannot look to the Plaintiff's contacts with Florida in order to establish personal jurisdiction over EZ Advance, and "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Rather, the "exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 286. Here, Plaintiff failed to alleged any intentional conduct by EZ Advance that creates the necessary contacts with Florida. *Id.*

In addition, Plaintiff failed to establish that either Defendant purposefully availed itself of the privilege of conducting business in Florida, or that jurisdiction would not offend traditional notions of fair play and substantial justice. Under these circumstances, exercising jurisdiction over Shamuelov or EZ Advance would violate Defendants' due process rights and

offend traditional notions of fair play and substantial justice. Shamuelov is a resident of New York and has never resided in Florida. *See* Declaration of Gabriel Shamuelov, attached as **Exhibit A**, at ¶¶ 3-5. Shamuelov does not conduct business in Florida, and his only connection to Florida is the present lawsuit. *Id.* at ¶¶ 6-7. Shamuelov conducted the business described in the Amended Complaint from New York. *Id.* at ¶ 10. Shamuelov never attended trade shows or business events in Florida for his own purposes or on behalf of EZ Advance. *Id.* at ¶ 20. During the time described in the Amended Complaint, the only customer Shamuelov or EZ Advance ever serviced in Florida was Plaintiff. *Id.* at ¶ 21. Shamuelov never traveled to Florida to meet Plaintiff's principal, Leandro Obenauer. *Id.* at ¶ 22. EZ Advance is a New York corporation that does not maintain an office or place of business in Florida, is not qualified or authorized to do business in Florida, has no employees or agents in Florida, has not authorized any agent to accept service in Florida, does not own or lease any real property in Florida, does not engage in any advertising or marketing in Florida, does not send employees to conduct business or marketing in Florida, and has never attended trade shows or business events in Florida. *Id.* at ¶¶ 11-19.

Therefore, the Court should dismiss the claims against Shamuelov and EZ Advance for lack of personal jurisdiction.

### B. Plaintiff Failed to Plead Fraud with Particularity, so the Fraud-Based Claims Must be Dismissed.

At the heart of this lawsuit is the assertion that Plaintiff was fraudulently induced into signing a Revenue Purchase Agreement based upon a supposed "promise" that Plaintiff could get two additional rounds of financing from SuperFast Capital. *See* Am. Compl. ¶¶ 24-26. Plaintiff asserted seven fraud-based claims that arise out of this alleged "promise." *See* Am. Compl. Counts I-III (federal and state RICO), Count IV (aiding and abetting fraud), Count V (fraudulent inducement), Count VI (conspiracy to commit fraud), and Count VII (FDUPTA violations). Plaintiff bore the burden of pleading the alleged fraud with particularity as to each of these claims. Under Rule 9(b), Plaintiff was required to plead: (1) "precisely" the statements or omissions that constituted the fraud; (2) the time and place of each statement and; (3) who made each statement; (4) the content of each statement and how each misled the plaintiff, and; (5) what the defendant gained by the fraud. *Rutstein v. Viva 5 Group, LLC*, 766 F. Supp. 3d 1189, 1197 (M.D. Fla. 2025) (Jung, J.). Plaintiff bore the same burden on its RICO claims, *Stillwell v. Mezer*, No. 8:25-CV-01608-WFJ-AEP, 2026 WL 452464, at *3 (M.D. Fla. Feb. 18, 2026) (Jung, J.), and the FDUPTA claim. *Blair v. Wachovia Mortg. Corp.*, No. 5:11-CV-566-OC-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012). Plaintiff failed to meet its burden.

Despite its volume, the Amended Complaint contains only three allegations which even attempt to describe the "two-week campaign of deception" allegedly perpetrated by Shamuelov prior to Obenauer signing the Revenue Purchase Agreement (¶¶ 24-26), only a single paragraph that purports to include the allegedly-false statements made by Shamuelov (¶ 26), and only a single sentence that addresses the alleged "promise" made. That lone sentence states: "Shamuelov promised Plaintiff an immediate $75,000 advance followed by two guaranteed additional rounds ($150,000 and $300,000) that were allegedly pre-approved with no further underwriting required." *Id.* at ¶ 26. This allegation is manifestly insufficient under Rule 9(b) for it fails to identify what exactly was said, the time, place, and manner the statement was made, how it mislead Plaintiff, and what each Defendant gained from the statement. Plaintiff subsequently alleged that Obenauer "understood that once 30% of the first round was repaid he would receive the second round without further underwriting." *Id.* at ¶ 31. However, Plaintiff cannot rely upon Obenauer's "understanding" or assumptions to state a claim for fraudulent inducement; Plaintiff must show that it relied upon an affirmative misrepresentation. *See, e.g.*, *Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999); *Open Sea Distribution Corp. v. Artemis Distribution, LLC*, 692 F. Supp. 3d 1151, 1197-98 (M.D. Fla. 2023); *Garrett-*

*Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1139 (M.D. Fla. 2021).[7] In addition, the Plaintiff's allegations do not identify what role, if any, EZ Advance played other than, as Obenauer claims he later learned, serving as the "broker of record." Am. Compl. ¶ 34. Plaintiff never identifies any verbal or written false statement made by EZ Advance to Obenauer. Thus, the fraudulent inducement claim must be dismissed against both Shamuelov and EZ Advance.

### C. The RICO Claims Must be Dismissed for Failure to Plead any Facts to Support Them.

As stated, because the RICO claims sound in fraud, Plaintiff had to plead them with particularity. *Stillwell v. Mezer*, No. 8:25-CV-01608-WFJ-AEP, 2026 WL 452464, at *3 (M.D. Fla. Feb. 18, 2026) (Jung, J.). Because Plaintiff failed to plead the alleged fraud with particularity, the RICO claim must be dismissed. *See Ou v. Click Labs, Inc.*, No. 8:22-CV-1341-WFJ-SPF, 2023 WL 2499151, at *4 (M.D. Fla. Mar. 14, 2023) (Jung, J.) (dismissing RICO claim for failure to meet heightened pleading requirement applicable to fraud claims). In addition, as argued below, the usury claim should be

---

[7] Plaintiff subsequently alleges the "Super Top Defendants" defrauded Plaintiff by failing to provide certain disclosures. *See* Am. Compl. ¶¶ 71-80. Specifically, Plaintiff asserts: "Had the disclosures been furnished, Plaintiff would have learned that Matt Owens was a broker for EZ Advance (Shamuelov) receiving a commission. Those facts would have exposed the impersonation and prevented the transaction." *Id*. at ¶ 79. These allegations do not help to state a claim against Shamuelov or EZ Advance, and they suggest that but for the Super Top Defendants' alleged failure, the fraud would not have been perpetuated.

dismissed because Plaintiff failed to attach the Funding Agreement and because Plaintiff's allegations that the transaction was actually a usurious loan are scant and conclusory. *See Harris v. Jan*, No. 218CV383FTM29MRM, 2018 WL 4898831, at *3 (M.D. Fla. Oct. 9, 2018) (Steele, J.) (dismissing RICO claim based on usury for lack of factual allegations supporting a usurious transaction); *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1362 n.4 (S.D. Fla. 2015) (rejecting plaintiffs' argument that they sufficiently pled RICO liability and dismissing complaint because "Plaintiffs set forth conclusory allegations" of usurious conduct).

### D. Plaintiff Failed to Attach the Revenue Purchase Agreement, Depriving the Defendants of Potential Procedural and Substantive Defenses.

Despite asserting that Shamuelov's alleged fraudulent misrepresentations induced Plaintiff to sign the Funding Agreement, Plaintiff failed to attach the Funding Agreement or the eight addenda.[8] Plaintiff's allegations do clearly establish that on February 12, 2025, Plaintiff received the $75,000 cash payment in exchange for the sale of Plaintiff's receivables. Am. Comp. ¶ 31. Under the circumstances, the failure to attach the Funding Agreement constitutes grounds for dismissal. The Plaintiff's

---

[8] Plaintiff attached only one addendum to the Funding Agreement to the Amended Complaint.

allegations – including the lack of any specific factual allegations regarding the "promise" made by Shamuelov - demonstrate that Plaintiff received exactly what it sold: $75,000 in funding. Given the absence of factual allegations that a knowingly false "promise" was made to Obenauer and Plaintiff's reliance upon Obenauer's "understanding" regarding future funding, the Court should require that in any amended pleading, Plaintiff attach the Funding Agreement and all signed addenda. In this way, the Court will be in a position to determine whether any of the alleged false statements made by Shamuelov were actually false by a comparison to the language of the parties' agreement. *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, No. 6:07CV1503ORL19KRS, 2008 WL 341309, at *3 (M.D. Fla. Feb. 5, 2008) (dismissing fraudulent and negligent misrepresentation claims based in part on presence of merger clause and stating: "Fraud in the inducement may be considered a tort independent of a contract claim. However, no action for this tort will lie where the alleged fraud contradicts a subsequent written contract." (internal citation omitted)).[9]

---

[9] Defendants are not arguing that the plaintiff is always required to attach a copy of the contract to its pleading. For instance, in a breach of contract lawsuit, the plaintiff need not attach the contract but must paraphrase the provisions that were allegedly breached by the defendant. *E.g.*, *Contractor Tool Supply, Inc. v. JPW Indus., Inc.*, 785 F. Supp. 3d 1107, 1114 (M.D. Fla. 2025). Given the Plaintiff's manifest inability to plead its claims (including the fraud-based claims), the Court's order that Plaintiff clean up its initial pleading, ECF No. 40, and the potential clear legal bar to several of its claims, Plaintiff should be required to attach all of the contractual documents going forward.

The Plaintiff's failure to attach the contractual documents also prevents the Court from determining whether the parties agreed to litigate in a specific forum or apply New York or Florida (or another state's substantive) law. "The plaintiff's 'venue privilege' is extinguished when the parties have agreed to litigate in a particular forum." *Divine Serenity Shop, Inc. v. Plant Identification Inc.*, No. 8:24-CV-2081-WFJ-LSG, 2025 WL 1370348, at *4 (M.D. Fla. May 12, 2025) (Jung, J.) (citing *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W.D. Tex.*, 571 U.S. 49, 63 (2013)). If the parties agreed to a forum in the Funding Agreement, Plaintiff was required to file suit in the designated venue. By failing to attach the Funding Agreement, Plaintiff has prevented the Defendants and the Court from ensuring this action was brought in the proper venue.

The effect of the failure to attach the transactional documents is heightened because Plaintiff seeks a declaration of its rights and obligations under the Funding Agreement and asks that the Court declare it to be void, voidable and/or rescindable at Plaintiff's election. Am. Compl. ¶¶ 215-21. Plaintiff has also asserted a usury claim under Florida law "and/or applicable state law". *Id.* at ¶¶ 229-40. Plaintiff went so far as to allege that the Funding Agreement was, in substance, not a transaction whereby Plaintiff's future accounts receivables were purchased but was, in fact, a loan. *Id.* at ¶¶ 98-102.

By claiming the Funding Agreement is merely a cover for a usurious loan but failing to attach the Funding Agreement, Plaintiff has put the specific language of the contract at issue and should have attached it. In addition, the viability of Plaintiff's usury claim cannot be determined without attaching the Funding Agreement and identifying the parties' agreed choice of law (if any), for each state's usury laws differ. *Compare* N.Y. Gen. Oblig. Law § 5–501(6)(b) (usury does not apply to loans in excess of $2.5 million dollars) *with* Fla. Stat. § 687.02(1) (usury does not apply to loans in excess of $500,000 dollars unless the interest rate exceeds 25%). For instance, New York law prohibits a corporation from asserting criminal usury as a claim for affirmative relief, as Plaintiff appears to attempt here. *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 279 (S.D.N.Y. 2017). New York law also provides that the determination of whether a transaction is a usurious loan begins with an examination of the face of the contract. *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 336, 179 N.E.3d 612, 623 (2021) ("Usurious intent is 'an essential element of usury' and 'where usury does not appear on the face of the note, usury is a question of fact'". (citation omitted)). By failing to attach the Funding Agreement, Plaintiff prevents a proper and timely determination of whether Plaintiff's usury claim is viable. In addition, Plaintiff failed to allege any

specific facts that would demonstrate that the purchase of its receivables was a cover for a usurious loan.

For all of these reasons, the Court should dismiss the Amended Complaint and require in any future pleading that Plaintiff attach the Funding Agreement and all signed addenda.

### E. Plaintiff's Amended Complaint Must be Dismissed in its Entirety Because Plaintiff Failed to Identify any Damages.

As previously stated, according to Plaintiff's own allegations, Plaintiff got exactly what it bargained for because Obenauer signed an agreement to receive a payment of $75,000 in return for the sale of Plaintiff's accounts receivables and Plaintiff actually received that money. Nevertheless, Plaintiff claims it suffered damages which include but are not limited to "ACH payments,... loss of use of funds, and lost business opportunities[,]" Am. Compl. at ¶ 134, and "payments extracted by weekly ACH debits". *Id.* at ¶ 182. It goes without saying that Plaintiff was obligated to repay the monies it borrowed through the sale of its accounts receivables, so Plaintiff cannot have been damaged by repaying by ACH transactions. Nor could Plaintiff have suffered any compensable "loss of use of funds" by repaying pursuant to the parties' agreement. Thus, Plaintiff's alleged damages are non-existent. Plaintiff also baldly asserts that it suffered "lost business opportunities." *Id.* at ¶¶ 134, 141, 150. However, these allegations are mere legal conclusions that

the Court should reject. *Worldwide Aircraft Services Inc. v. Sec'y of Health & Human Services*, 763 F. Supp. 3d 1371, 1381 (M.D. Fla. 2025) (Jung, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### F. Plaintiff's Claims Against EZ Advance Must be Dismissed for Failure to State a Claim.

As stated above, Plaintiff failed to allege that EZ Advance ever took any affirmative action in dealing with Plaintiff. In fact, Plaintiff only came to learn of EZ Advance's existence after the alleged fraud was perpetrated when a third party told Obenauer that EZ Advance was "the broker of record". Am. Compl. ¶ 34. Shamuelov never mentioned EZ Advance and held himself out as working for SuperFast Capital. *Id.* at ¶ 24. Plaintiff cannot maintain a fraudulent inducement claim against EZ Advance when it is undisputed that EZ Advance did not make any representations to Plaintiff. *See Rutstein v. Viva 5 Group, LLC*, 766 F. Supp. 3d 1189, 1197 (M.D. Fla. 2025) (stating the requirement that plaintiff must allege, *inter alia*, "precisely what statements or omissions were made in which documents or oral representations", and the failure to do so is grounds for dismissal). Count IV must be dismissed.

Similarly, there is no basis for a fiduciary relationship between Plaintiff and EZ Advance because there cannot be a relationship where one party is ignorant of the other party's existence. "A fiduciary or confidential relationship exists where 'confidence is reposed by one party and a trust is

accepted by the other, or where confidence has been acquired and abused.'"
*Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp.
2d 1170, 1179 (M.D. Fla. 2005) (quoting *Doe v. Evans,* 814 So. 2d 370, 374
(Fla. 2002)). "To state a claim for breach of a fiduciary or confidential
relationship, 'a party must allege some degree of dependency on one side and
some degree of undertaking on the other side to advise, counsel, and protect
the weaker party.'" *Am. Honda Motor Co.,* 390 F. Supp. 2d at 1179 (quoting
*Watkins v. NCNB Nat. Bank of Fla., N.A.*, 622 So.2d 1063, 1065 (Fla. 3d DCA
1993)). Here, Plaintiff failed to include any allegations that EZ Advance
undertook to advise, counsel, and protect Plaintiff. In fact, Plaintiff and EZ
Advance were not dealing with each other at all, since Plaintiff never knew
about EZ Advance until after the alleged fraud had been perpetrated.
However, even if, *arguendo*, EZ Advance was the "lender" and Plaintiff was
the "borrower", no fiduciary relationship would exist. *Linville v. Ginn Real
Estate Co., LLC*, 697 F. Supp. 2d 1302, 1307 (M.D. Fla. 2010); *Thunder
Marine, Inc. v. Brunswick Corp.*, 277 Fed. Appx. 910, 913 (11th Cir. 2008).
Plaintiff's claim for breach of fiduciary duty (Count XIV) must be dismissed.

### G. The Negligence Claim Must be Dismissed

Finally, Count XI purports to state a claim for "negligent
undertaking/supervision" against EZ Advance. Plaintiff alleges that EZ
Advance negligently hired, retained, and supervised Shamuelov. Am. Compl.

¶¶ 184, 187. Negligent undertaking and negligent supervision are distinct claims that must be pled separately. *Pinto v. Collier Cnty.*, No. 219CV551FTM60MRM, 2019 WL 5722172, at *2 (M.D. Fla. Nov. 5, 2019); *Finch v. Carnival Corp.*, 701 F. Supp. 3d 1272, 1283-84 (S.D. Fla. 2023) (collecting cases). Therefore, Count XI must be dismissed.

Furthermore, there is no reason that Florida law would apply to either claim because EZ Advance is a New York business. Plaintiff failed to plead any basis for the application of New York law. Finally, even if, *arguendo*, Florida law applied, Plaintiff failed to allege any *facts* (as opposed to legal conclusions), showing: (a) how EZ Advance's alleged failure to exercise reasonable care increased the risk of Plaintiff allegedly being defrauded in this specific transaction; (b) that EZ Advance undertook a duty owed; (c) that Plaintiff was damaged because of its reliance on EZ Advance; (d) that EZ Advance received any prior complaints about Matt Owens' alleged lack of fitness and failed to take corrective action. *See Bucklin v. Bank of Am., N.A.*, No. 2:24-CV-278-JLB-NPM, 2025 WL 1504043, at *10-12 (M.D. Fla. Mar. 11, 2025). For these reasons, Count XI should be dismissed.

### IV.    Conclusion

For the foregoing reasons, the Plaintiff's Amended Complaint should be dismissed.

## Local Rule 3.01(g) Certificate

I hereby certify that I conferred with the opposing party in a good faith effort to resolve the motion. Specifically, we raised the issues by email on February 24, discussed the issue by telephone on February 26, and conferred again by email on February 27. The parties do not agree on any of the issues raised in this motion.

Respectfully submitted,

LETO LAW FIRM
2875 NE 191st
Street Suite 604
Aventura, FL 33180
Tel.   305-341-3155
Fax:  305-397-1168

*/s/ Matthew P. Leto*
MATTHEW P. LETO
Florida Bar No.: 014504
mleto@letolawfirm.com
kzelaya@letolawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 2, 2026, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Matthew P. Leto*
MATTHEW P. LETO