## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MT PRODUCTS, LLC | |
| *Plaintiff,* | 8:25-CV-02510 WFJ-SPF |
| v. | |
| ALTERNATIVE CAPITAL GROUP, LLC, SUPERFAST CAPITAL, INC.; TOP CHOICE FINANCIAL, INC.; CURE PAYMENT RECOVERY SOLUTIONS, LLC; SUPERVEST, INC.; SV CAPITAL MANAGEMENT, LLC; EZ ADVANCE LLC; GABRIEL SHAMUELOV a/k/a/ Matt Owners" and "Jason Caldwell; and Does 1-10. | |
| *Defendant.* | |

**DEFENDANTS', SUPERVEST, INC., SV CAPITAL MANAGEMENT, LLC, AND TOP CHOICE FINANCIAL, INC., MOTION TO DISMISS PLAINTIFF'S AMENDEDCOMPLAINT PURSUANT TO A RULE 12(B)6 AND RULE 12(B)(1) AND INCORPORATED MEMORANDUM OF LAW**

Defendants, SUPERVEST, INC. ("SuperVest"), SV CAPITAL MANAGEMENT, LLC ("SVC Management"), and TOP CHOICE FINANCIAL, INC. ("Top Choice", and collectively with SuperVest and SV Management, the SuperVest, the "SVTC Defendants") by and through their undersigned counsel, hereby move this Court to dismiss Plaintiff's, MT Products, LLC ("Plaintiff"), Amended Complaint ("AC") [D.E. 42], and in support state as follows:

## Introduction

The SVTC Defendants filed a motion to dismiss that provided Plaintiff with a guide to the many fatal defects in its original complaint. This Court also specifically instructed Plaintiff to "*carefully review the Eleventh Circuit's teachings on a "shotgun pleading" and follows those matter carefully*" [D.E. 40](emphasis add). Rather than attempt to cure the pleading defects, Plaintiff returned another "shotgun pleading" that is plagued by the same deficiencies. The AC reads more like a disgruntled internet blog than the short, plain statement of jurisdiction and claims mandated by Rule 8 of the Federal Rules of Civil Procedure.

The AC alleges a series of disconnected allegations arising from a single business transaction that Plaintiff has alchemized into a sweeping conspiracy and racketeering enterprise. Although the 50-page AC meanders through numerous irrelevant episodes and conclusory allegations to support Plaintiff's whooping twenty substantive claims, the facts are straightforward. Plaintiff entered into a single revenue based financing contract under which Plaintiff sold 15% of total future receipts up to the sum of $109,500 in exchange for a discounted purchase price of $75,000 ("RBF Agreement"). Plaintiff asserts that prior to signing the RBF Agreement, Defendant Gabriel Shamuelov falsely represented to the Plaintiff that it would receive subsequent financing, provided Plaintiff with "eight versions" of a document purporting to be an

addendum to the RBF Agreement containing the additional financing rounds, and coached Plaintiff's owner to lie during a verification call when asked whether any additional funding rounds were promised.

In doing so, Plaintiff makes several damaging admissions. Specifically, Plaintiff admits to making materially false statements to induce the financing transaction[1]. Additionally, Plaintiff admits to rejecting an offer to rescind the transaction This rescission would have returned Plaintiff to its original position and eliminated the damages now alleged.

The Court should dismiss Plaintiff's baseless claims with prejudice. Each of fails on the merits in multiple independent respects. Any further amendment would be futile. Further, despite this Court permitting Plaintiff to amend its complaint and specifically instructed Plaintiff to review and carefully follow the Eleventh Circuit's teachings on shotgun pleadings, Plaintiff refiled another shotgun pleading. This too warrants dismissal with prejudice.

## Argument

## I.        The Complaint Is An Impermissible Shotgun Pleading.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to

---

[1] *Sec. & Exch. Comm'n v. Monterosso*, 07-61693-CIV, 2011 WL 13173809, at *3 (S.D. Fla. Mar.8, 2011) ("admissions in pleading are deemed judicial admission, binding on the party who makes them, even if the party offers post-pleading evidence which contradicts the admission.").

relief." Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. Complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "[A] complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" constitutes a shotgun pleading. *Id*. Indeed, the Eleventh Circuit has established that a shotgun pleading is unacceptable and a court should strike the complaint and instruct the plaintiff to file a more definite statement. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) (collecting cases), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As is the case here, when a district court permits  a litigant to replead and remedy a shotgun pleading issue, provides the litigation with instruction on how to do so, and the litigant fail to fix the problem, the court may dismiss the complaint with prejudice. *Vibe Micro, Inc. v. Shabanets*, 2018 WL 268849 (11th Cir. Jan. 3, 2018).

This Court granted the Plaintiff the opportunity to amend its complaint and specifically instructed the Plaintiff to carefully review  this Circuit's teachings on "shotgun pleading". [D.E. 40]. Further, SVTC Defendants first motion to dismiss raised this issue, thereby putting Plaintiff on notice about its pleading defects. Despite this, Plaintiff refiled pleading is still very type of shotgun pleading the Eleventh Circuit deems unacceptable. Rife with irrelevant factual allegations, contradicting facts and legal conclusions,  each of the AC's 20 substantive claims each incorporates all prior paragraphs in the, rendering the final count a combination of the entire complaint. *See AC.* at ¶¶ 103, 111, 120, 129, 136,143, 153,162,171,178,183,188,198,204,209215,222,226, 229, 241.

Making matters worse, the AC requires defendants to speculate and search through the pleading to determine the specific nature of the Plaintiff's grievances and which allegations apple to each claim. *Shillingford v. Rolly Marine Serv., Inc.*, No. 14-CIV-61936, 2014 WL 6682477, at *2 (S.D. Fla. Nov. 25, 2014)(the Court cannot be forced to speculate on what someone is complaining about,  simply fill in the blanks to state a claim, or search through a Plaintiff's filings to find or construct a pleading that satisfies Rule 8.). Yet, the Complaint leaves both the court and defendants to undertake this task.

For example, the AC identifies multiple distinct association in fact enterprises under the RICO statute.  "*[F]or pleading clarity*", Plaintiff defined

SuperFast Capital, Inc,  Alternative Capital Group, LLC;  Cure Payment Recovery Solutions, and the SVTC Defendants as the "Super Top Defendants" which  "operated as an association-in-fact enterprise within the meaning of 18 U.S.C.  1961(4)" having "a common purpose of generating revenue through merchant cash advance transaction". AC at ¶ 18 (emphasis added). Neither EZ Advance nor Defendant Shamuelov are included in the Super Top Defendants, yet Plaintiffs RICO count is includes "all Defendants".  Adding to the confusion, Plaintiff also alleges under the RICO count that the enterprise included  the Super Top Defendants (its own enterprise previously defined in the AC and incorporated by referenced AC at  ¶  18, 103), Defendant EZ Advance, and Defendant Shamuelov as an association-in-fact enterprise. Id at ¶ 104. Thus forming a second enterprise.

Likewise, Plaintiff alleges that while the defendants were active participants in a RICO conspiracy, they failed to take adequate steps to uncover the fraudulent scheme they were allegedly furthering. *Id*. at ¶¶ 49-55. While this appears illogical, defendants are left to speculate whether these allegations relate to the RICO claims or one of the other dozen counts. Even affording Plaintiff the favorable inference that these allegations support a claim other than the RICO scheme, Plaintiff returns to the RICO allegations in the subsequent eight paragraphs under the heading "Supervest & Top Choice Role in Fraud." Although none of the paragraphs

in this section allege fraudulent conduct, the SVTC Defendants are left to guess whether these allegations relate back to the RICO claims or another count. *Id. at* ¶¶56-60.

Plaintiff further alleges that the Florida UCC-1 was filed by a deceased individual, yet attributes this alleged "fraudulent on its face act" to different defendants throughout the AC. The upshot being the defendants are left to guess who is responsible for that action. *Id*. at ¶¶66, 131, 146. Moreover, these allegations are entirely irrelevant as Plaintiff's own exhibit contradicts the allegations that the UCC statement was filed by a deceased individual. (See D.E. 42-4 ). While Mr. Vaknen's name appears next to the mailing address for SuperFast Capital, Inc., the UCC statement does not identify him as the filer. Instead, the filer of the UCC statement is Corporation Service Company. *Id*.

Based on the glaring pleading deficiencies, the AC should be dismissed as an impermissible shotgun pleading.

## II.  **EACH OF PLAINTIFF'S CLAIMS FAIL ON THE MERITS.**

To survive a Rule 12(b)6 motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (citing Fed. R. Civ. P. 9(b). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Id*. at 1316-17.

The AC fails to satisfy the heightened pleading requirement mandated by Rule 9(b) as well as the general pleading standard. The allegations in the Complaint fail to alert SVTC Defendants of any alleged misconduct on their part, let alone  their active participation in a criminal racketeering enterprise.

### a.  The Complaint Fails State A Cause Of Action For Civil RICO Requires Dismissal

Plaintiff fails to allege a plausible federal RICO claim.  To state a viable RICO claim, a plaintiff must plausibly allege that each defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity

that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216. A RICO claim can be dismissed if it fails to plausibly allege any one of these six elements. *Id.*

## 1. Plaintiff Has Not Alleged a Cognizable Rico Enterprise

Plaintiff alleges engaged in an association-in-fact enterprise. *See AC* at ¶18

A RICO enterprise is " a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). "[T]he relevant "purpose" in an association-in-fact enterprise is the members' *shared purpose of engaging in illegal activity*." *Al-Rayes v. Willingham*, 914 F.3d 1302, 1308 (11th Cir. 2019) (emphasis added). However, an abstract common purpose of making money-like providing and servicing revenue-based financing transaction to businesses - does not constitute a RICO enterprise. *Cisneros*, 972 F.3d at 1211 *citing Ray v. Spirit Airlines, Inc.*, 836 F.3d at 1352–53, 1352 n.3 (observing that the "common purpose of making money" would not be sufficient to find an association-in-fact enterprise between Spirit Airlines and outside vendors who merely provided "anodyne services").

Instead, if making money is a participants' ultimate purpose, a plaintiff is required to "plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id.*

*citing Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1284–85 (11th Cir. 2006) (finding sufficient a common purpose of making money by hiring undocumented immigrants*), abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714–15 (11th Cir. 2014); *United States v. Pipkins*, 378 F.3d 1281, 1290 (11th Cir. 2004) ( finding participation in an enterprise where the overall objective of which was to make money prostituting juveniles."), *vacated*, 544 U.S. 902, 125 S.Ct. 1617, 161 L.Ed.2d 275 (2005), *reinstated*, 412 F.3d 1251 (11th Cir. 2005).

Far from pursuing unlawful ends, the corporate RICO defendants shared in a legitimate "common purpose of generating revenue through merchant cash advance transaction". AC at ¶18. Plaintiff's own allegations that are fatal to establishing the purported RICO enterprise's shared purposed was Indeed, Plaintiff undercuts its own RICO claim by admitting the SVTC Defendants and other corporate RICO defendants took steps to prevent the exact fraudulent conduct Plaintiff alleges Shamuelov engaged in on behalf of the RICO enterprise. For example, during the third-party verification funding call that occurred before the RBF Agreement could be finalized and Plaintiff received any funds, Plaintiff was specifically asked whether additionally financing was promised, which Plaintiff  falsely replied  "no" in order to receive funding. AC ¶52. Confronted with this fact, Plaintiff asserts the funding call was designed to be "incapable of detecting true fraud" by asking Plaintiff specifically whether

additional financing rounds were promised. Instead, Plaintiff asserts the question asked should have been "if the [Plaintiff] was coached, or providing funding addendums which should have been provided (sic)." *Id*. 54.

interested in making money, and not making money through criminal conduct, which fails to satisfy the common purpose prong. Indeed, Plaintiff concedes  to making false statements during the funding call to circumvent the defendants' efforts to detect and prevent the very alleged fraudulent conduct central to this case.

## 2. Plaintiff has Not alleged that each RICO Defendant Engaged in At Least Two Predicate Acts.

Plaintiff fails to allege a pattern of racketeering activity that involves at least *two* predicate acts by each RICO Defendant. *Cisneros*, 972 F.3d at1208.

Plaintiff alleges in conclusory fashion the racketeering activities consisted of multiple predicate acts including: mail fraud; wire fraud;  identity theft; computer fraud and; money laundering *AC*. at.¶19; 108.  Yet the Plaintiff does not and cannot link any of these alleged RICO predicates to the SVTC Defendants conduct.

**No Mail Fraud**. Plaintiff seems to think its failed attempt to serve the SVTC Defendants with a pre-suit demand letter constitutes mail fraud. Plaintiff is wrong.  Mail fraud occurs when the U.S. Mail is used in the furtherance of a criminal consisting of the following elements : [1] the

defendant engaged in a scheme to defraud; [2]the scheme must have involved material misstatements or omissions; [3]he scheme resulted, or would have resulted upon completion, [4]in the loss of money, property, or honest services; and [5] the defendant must have used or caused the use of U.S. mail in the furtherance of the scheme to defraud. 18 U.S.C. 1341.  Plaintiff fails to plead even one of these elements with the specificity required under Rule 9(b), let alone all five.

Plaintiff's assertion that its failure to serve the SVTC Defendants with a pre-suit demand letter constitutes mail fraud also ignores the fact that Plaintiff – not SVTC  Defendants-  is the party who sent the demand letter through the mail.

**No Wire Fraud, Identity Theft, Computer Fraud, or Money Laundering.** The AC is devoid of factual allegations plausibly linking the SVTC Defendants to predicate acts of wire  fraud, identity theft, or computer fraud.   Rather, Plaintiff attributes these predicate acts  to Defendant Shamuelov, taking place over an approximate 1 week period and period to entering into the RBA Agreement. AC at ¶¶19., 108.

Plaintiff does not even attempt to allege any facts that would permit this Court to infer Plaintiff' plausibly plead money laundering as a predicate act. Rather, Plaintiff  merely asserts money laundering is a predicate act  "through the movement of fraudulently obtain funds."  AC at 108.  Thus, the allegation

fails to meet the specificity requirements of Rule 9(b) regarding the *who, what, when, where, and how* of the alleged fraud.

### 3. Plaintiff Has Not Plausibly Alleged a Pattern of Racketeering Activity.

Beyond pleading two specific predicate acts by each defendant, a RICO plaintiff must also allege that defendants engaged in a *pattern* of racketeering activity-that is, that the acts "amount to, or ... otherwise constitute a threat of, continuing racketeering activity." *HJ Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 240 (1989). A plaintiff must do this either by pleading "closed-ended" or "open-ended" continuity. Here, Plaintiff succeeds at neither.

A party can allege closed-ended continuity "by proving a series of related predicates extending over a substantial period of time." *Jackson,* 372 F.3d at 1265 (quotation marks omitted). Courts measure a substantial period of time in years, not weeks, and the Eleventh Circuit has categorically rejected allegations of closed-ended continuity when the supposed pattern of racketeering activity lasted less than nine months, and other circuits reject patterns lasting less than two years. *Id.* at 1266-1267 (collecting cases); *Halvorssen v. Simpson,* 807 F. App'x 26, 31 (2d Cir. 2020) (noting two-year "minimum" for closed-ended continuity).Plaintiff , has failed to plead the existence of any predicates, let along related predicates extending over a substantial time period. Indeed, assuming Plaintiff had plead the existence of relating

predicates, the time period is less than a year.

Plaintiff has also failed to plead open-ended continuity, which requires a showing that "the alleged acts were part of the defendants' regular way of doing business *Jackson,* 372 F.3d at 1267 (quotation marks omitted). To the contrary, Plaintiff concedes he was asked specifically whether any promises of additional financing were made prior to agreeing to the RBF Agreement. In response, the Plaintiff intentionally misrepresented that no such promises existed. Plaintiff's own conduct in connection with a single transaction—which netted the Plaintiff approximately $73,000—precludes allegations that the SVTC Defendants engaged in a pattern of criminal conduct of a continuing nature as Plaintiff's own fraudulent conduct would need to part of the RICO scheme.

### 4. Plaintiff fails to Plead Damages.

Finally, Plaintiff's own conduct in connection with this single transaction forecloses any credible allegations concerning damages or injury proximately caused by the RICO enterprise. As noted above, in order to receive the financing under the RBF Agreement, Plaintiff intentionally mispresented and concealed the Broker Defendant's alleged promise of additional financing. Two months after receiving approximately $73,500 under RBF Agreement and utilizing those funds to its benefit, Plaintiff concedes it rejected an offer to completely unwind the transaction. This is no small concession. Because had Plaintiff agreed to the recession offered in April 2025, Plaintiff would have

returned to the same exact position it held  prior to entering the February 11th RBF Agreement.  Instead, Plaintiff  continued to perform under the RBF Agreement until approximately the same time as it commenced this action despite allegedly uncovering this RICO enterprise in April 2025. As the Plaintiff failed to plausibly allege a claim under the federal RICO statue, Plaintiff's RICO claim should be dismissed.

**b.    RICO Conspiracy Claims Fail Because the Plaintiff Failed to Allege a Substantive RICO Claim**

Because Plaintiff's substantive RICO claims fail, its conspiracy claims under 18 U.S.C. § 1962(d)  fail as well. As this Court noted, When substantive RICO claims are dismissed and a RICO conspiracy claim "adds nothing" to the substantive allegations, the conspiracy claims are also dismissed. *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1203 (11th Cir. 2025).

**c. Plaintiff failed to Plead a Substantive RICO Claim under Florida Law.**

Interpterion of Florida's RICO law is informed by case law interpreting the federal RICO statute on which Chapter 772 is patterned." *Jackson   v. BellSouth  Telecommunications*, 372 F.3d 1250, 1263 (11th Cir. 2004); *see also Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*, 881 So. 2d 565, 570 n.1 (Fla. Dist. Ct. App. 2004) ("Because of the similarities between Florida and federal RICO acts, Florida looks

to federal authority regarding the interpretation and application of its act.").Accordingly, Plaintiff's RICO claims under Florida law should also be dismissed.

**d. Plaintiff's Remaining Fraud Claims must be dismissed Because Plaintiff Failed satisfy Rule 9(b) Pleading Requirements.**

The critical concern reflected in Rule 9(b) is that the allegations sufficiently alert Defendants to the precise misconduct with which they are charged. *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511-12 (11th Cir. 1988).Plaintiff pleading defects that are fatal to its RICO claims extend to the remain fraud based claims. This claims include, Aiding and Abetting Fraud (Count IV), Civil Conspiracy to Commit Fraud (Count VI), Violations of Florida Deceptive and Unfair Trade Practices Act (Count VII), Violation of New York General Business Law 349 (Count XIII)

**e. The RBF Agreement is not a Loan**.

Plaintiff's claims for Declaratory judgment (Count XVI)l Usury (Count XIX) Plaintiff conspicuously omits the RBF Agreement from the AC. Instead, Plaintiff cherry picks from the RBF Agreement in a transparent to mischaracterize the transaction as a loan. AC at 98-102. Plaintiff's assertion the RBF Agreement is a loan has been rejected by literally dozens of courts,

state and federal alike[2]. *See, e.g., Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 196 N.Y.S.3d 256 (N.Y. App. Div 2023); *US Information Group LLC v. EBF Holdings, LLC*, 2023 WL 6198803, at *10 (S.D.N.Y. Sept. 22, 2023); *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *5 (S.D.N.Y. Sept. 20, 2022).

If a transaction is not a loan, then there can be no usury . *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 665 (2d Dept. 2020). To determine whether a transaction constitutes a usurious loan, "[t]he court must examine whether the plaintiff is absolutely entitled to repayment under all circumstances. Unless a principal sum advanced is repayable absolutely, the transaction is not a loan. Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy." *Id.* at 666. The RBF Agreement satisfies all three prongs.

Plaintiff attempts to hoodwink this Court into believing the reconciliation provision was illusory. AC. At 99. In reality, the RBF Agreement provided two mandatory reconciliation provision. *See Exhibit* 1, Sections 1.3 -

---

[2] Section 4.5 provides "This Agreement, Security Agreement and Guaranty, Guaranty of Performance, and any and all addendums, attachments, exhibits, and other documents relating to this Agreement in any way, shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law".

1.4.    Section 1.3, titled "Reconciliation", provides a mandatory retroactive reconciliation provision with request to be emailed to superfastmerchantsupport@curepayment.com for requests while Section 1.4 provided ago forward mandatory reconciliation option.

In additional to mandatory reconciliation provisions, the RBF Agreement had neither a finite term nor provided any recourse in the event Plaintiff declared bankruptcy. To the contrary, the RBF Agreement provides:

> Merchant is selling a portion of a future revenue stream to FUNDER at a discount, and is not borrowing money from FUNDER; therefore, there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by FUNDER. The Remittance is a good faith estimate of FUNDER's share of the future revenue stream. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. FUNDER is entering this Agreement knowing the risks that Merchant's business may not perform as expected or fail, and FUNDER assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give FUNDER a reasonable and fair opportunity to receive the benefit of its bargain.

*See Exhibit* 1; p.2. The explicit terms of the RBF Agreement which Plaintiff failed to provide in this case contradict Plaintiff's assertion this transaction was loan.

F. **Plaintiff's Remaining Tort Claims Should Be Dismissed**

Plaintiff's claims for Negligent Supervision (Count X), Conversion XII, Breach of Fiduciary Duty (Count XIV); Unjust Enrichment (Count XV); Abuse of Process (Count XX) must be dismissed.    Parsing through the AC's

voluminous number of paragraphs that allege bare legal conclusions, irrelevant allegations, and self-serving rhetoric, the crux of the factual allegations against SVTC Defendants boil down to:

- SuperVest/SV Capital Management is a platform that allows investors to syndicate in revenue based financing transactions and provided the financing capital Plaintiff obtain under the RBF Agreement. *AC* at ¶¶56;

- Top Choice, as disclosed on the RBF Agreement, acted as the sub-servicer under RBF Agreement by providing the funds to Plaintiff and collecting Plaintiff's remittance under the agreement. *Id* at ¶¶ 58;

- Plaintiff unsuccessfully attempted to mail and serve Top Choice with a demand letter. *Id* at ¶ 35;

- SuperVest, SV and Top Choice share a common address and Plaintiff spoke with, shared employee who aided in May 2025. *Id* at ¶¶ 40;57

- The RBF Agreement includes an email address with the domain "@supervestcap.com" that did not work. *Id* at ¶ 58; and

- SuperVest refused "unconditional recession" despite Plaintiff rejecting an offer to rescind the transaction by returning the funds it received because such an offered was tone deaf. Id.  at ¶¶59, 95.

Because of the scarcity of factual allegations of any wrong doing these remaining claims should be dismissed.

### g.    The Court Lack Subject Matter Jurisdiction

Even if the Court find Plaintiff properly plead any of it state or tort claims (which it did not), the AC should  dismissed because the Court lacks subject matter jurisdiction. Plaintiff alleges the  Court  has  federal-question  jurisdiction under  28  U.S.C.  §  1331 because Plaintiff  asserts  federal RICO claims

under §§18 U.S.C. 1962(c) and 1962(d). Federal courts have limited subject-matter jurisdiction, and the party invoking the court's jurisdiction bears the burden of proving it exists." *Orchid Quay, LLC v. Suncor Bristol Bay, LLC*, 178 F.Supp.3d 1300, 1302 (S.D. Fla. 2016) (*citing McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (*per curiam*)). A party, or a court on its own initiative, can challenge whether the court has subject matter jurisdiction, at any time, under Fed.R.Civ.P. 12(b)(1). *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction once it has dismissed all claims over which it had original jurisdiction.

Plaintiff's jurisdictional anchor arises out its federal RICO claims under §§18 U.S.C. 1962(c) and 1962(d). But with these federal claims requiring dismissal, Plaintiff's anchor for federal jurisdiction is gone. District courts are generally encouraged  to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). Accordingly, all of Plaintiff's supplemental claims should be dismissed.

## Conclusion

**WHEREFORE**, the SVTC Defendants respectfully request that this Court enter an Order dismissing Plaintiff's Complaint with prejudice,

awarding the SVTC Defendants its reasonable costs and attorneys' fees, and all other relief deemed proper and just by this Court.

## Local Rule 3.01(g) Certification

The undersigned certifies that he has conferred with Plaintiff's counsel on February 27, 2026 and Plaintiff's do not consent to the relief requested by the instant motion.

Respectfully submitted,

**CASAGRANDE LAW, PLLC**
11 Broadway, Suite 615
New York, NY 10004
Tel.    646-355-8701
Fax:  212-568-3546

*/s/ David C. Casagrande*
David C. Casagrande (FL Bar No.: 124059)
dcasagrande@casalawpllc.com
*Attorneys for Defendants SuperVest, Inc.*
*SV Capital Management, LLC and Top Choice*
*Financial, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 2, 2026, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ David C. Casagrande*
DAVID C. CASAGRANDE